UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| STEVEN ALAN CARR and DAVID G. SCHUSTER, | ) ) ) | |
| Plaintiffs, | ) ) | 1:24-cv-772 |
| v. | ) ) | |
| TRUSTEES OF PURDUE UNIVERSITY, in their official capacities, | ) ) ) ) | |
| Defendants. | ) | |

**Complaint for Declaratory and Injunctive Relief / Notice of Claim of Unconstitutionality of an Indiana Statute**

**Introduction**

1. Indiana Code § 21-39.5 *et seq.* (eff. July 1, 2024), part of Senate Enrolled Act 202 ("S.E.A. 202"), imposes a variety of requirements and restrictions on faculty members at Indiana's public colleges and universities. Among other things, it requires that faculty members be denied tenure or promotion, and threatens them with discipline through and including termination, if they are deemed "unlikely" to "foster a culture of free inquiry, free expression, and intellectual diversity" within their institution, or if they are deemed to have failed to foster such cultures in the past. They are threatened with the same consequences if they are deemed unlikely to or to have failed to "expose students to scholarly works from a variety of political or ideological frameworks that may exist

[1]

within and are applicable to the faculty member's academic discipline." The statute requires that tenured faculty members be formally reevaluated every five years for compliance with these mandates, and it requires that colleges and universities establish a mechanism for students and employees to, at any time, report faculty whom they believe to be noncompliant. Those reports may then result in immediate discipline, including but not limited to demotion, salary reduction, and termination. This statute violates both the First and Fourteenth Amendments to the United States Constitution. The plaintiffs, tenured faculty members at Purdue University Fort Wayne, are entitled to a declaration that the statute is unconstitutional and an injunction preventing its enforcement.

**Jurisdiction, venue, cause of action**

2.　　This Court has jurisdiction of this case pursuant to 28 U.S.C. § 1331.

3.　　Venue is proper in this district pursuant to 28 U.S.C. § 1391.

4.　　Declaratory relief is authorized by 28 U.S.C. §§ 2201, 2202 and by Rule 57 of the Federal Rules of Civil Procedure.

5.　　This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of state law of rights secured by the Constitution of the United States.

**Parties**

6. Steven Alan Carr is an adult resident of Allen County, Indiana and a tenured faculty member at Purdue University Fort Wayne and will be teaching there in the 2024-2025 school year.

7. David G. Schuster is an adult resident of Allen County, Indiana, although through August 2024, he temporarily resides in California. He is a tenured faculty member at Purdue University Fort Wayne and will be teaching there in the 2024-2025 school year.

8. The Board of Trustees of Purdue University is its executive body, charged with taking "all acts necessary and expedient to put and keep Purdue University in operation." Ind. Code § 21-27-7-4. The individual members of the Board are sued in their official capacities.

**Legal background**

9. Senate Enrolled Act 202 ("S.E.A. 202" or "the Act") amends the Indiana Code concerning higher education.

10. Section 11 of the Act creates a new statutory article, to be codified at Indiana Code § 21-39.5 *et seq.*, entitled "State Educational Institutions: The Protection of Free Inquiry, Free Expression, and Intellectual Diversity."

11. The statutory prohibitions and requirements imposed by this article apply to state higher educational institutions (referred to in the Act as "institutions"), including Purdue University and its Board of Trustees. Ind. Code § 21-39.5-1 *et seq.* (eff. July 1, 2024).

12. The portion of the Act to be codified at Indiana Code § 21-39.5-2-1(b) (eff. July 1, 2024) provides in relevant part as follows:

> [E]ach board of trustees of an institution shall establish a policy that provides that a faculty member may not be granted tenure or a promotion by the institution if, based on past performance or other determination by the board of trustees, the faculty member is:
>
> (1) unlikely to foster a culture of free inquiry, free expression, and intellectual diversity within the institution; [or]
>
> (2) unlikely to expose students to scholarly works from a variety of political or ideological frameworks that may exist within and are applicable to the faculty member's academic discipline.

13. The statutory terms "free inquiry" and "free expression" are not defined, either in this statutory provision or elsewhere in the Code, but the term "intellectual diversity" is defined as "multiple, divergent, and varied scholarly perspectives on an extensive range of public policy issues." Ind. Code § 21-39.5-1-5 (eff. July 1, 2024).

14. S.E.A. 202 further provides, in relevant part:

> Not later than five (5) years after the date that a faculty member is granted tenure by an institution and not later than every five (5) years thereafter, the board of trustees of an institution shall review and determine whether the faculty member has met the following criteria:
>
> (1) Helped the institution foster a culture of free inquiry, free expression, and intellectual diversity within the institution.
>
> (2) Introduced students to scholarly works from a variety of political or ideological frameworks that may exist within the curricula established by the:
>
>> (A) board of trustees of the institution under IC 21-41-2-1(b); or
>>
>> (B) faculty of the institution acting under authority delegated by the board of trustees of the institution.

>   (3) While performing teaching duties within the scope of the faculty member's employment, refrained from subjecting student to views and opinions concerning matters not related to the faculty member's academic discipline or assigned course of instruction.
>
>   (4) Adequately performed academic duties and obligations.
>
>   (5) Met any other criteria established by the board of trustees.

Ind. Code § 21-39.5-2-2(a) (eff. July 1, 2024).

15.     The Act requires each institution to "adopt a policy that establishes disciplinary actions, including (1) termination; (2) demotion; (3) salary reduction; (4) other disciplinary action as determined by the institution; or (5) any combination of subdivisions (1) through (4)" that "the institution will take if the board of trustees determines in a review conducted under subsection (a) that a tenured faculty member has failed to meet one (1) or more of the criteria described in [Indiana Code § 21-39.5-2-2] (a)(1) through (a)(5)." Ind. Code § 21-39.5-2-2(d) (eff. July 1, 2024).

16.     An institution is also required, before "renew[ing] an employment agreement with," "mak[ing] a bonus decision regarding," or "complet[ing] a review or performance assessment" of a faculty member, to "give substantial consideration to the faculty member's…performance regarding the criteria described in section [Indiana Code § 21-39.5-2-2] (a)(1) through [](a)(5) of this chapter."  Ind. Code § 21-39.5-2-3(b) (eff. July 1, 2024).

17.     Each institution is required to establish and communicate a procedure by which both students and employees may submit complaints that any faculty member "is not

[5]

meeting the criteria described in [Indiana Code § 21-39.5-2-2] (a)(1) through [](a)(5)." Ind. Code § 21-39.5-2-4(a)(1), (2) (eff. July 1, 2024).

18. If any complaints are received, the Act requires the institution to refer them to "appropriate human resource professionals and supervisors for consideration in employee reviews and tenure and promotion decisions." Ind. Code § 21-39.5-2-4(a)(3) (eff. July 1, 2024).

**Factual allegations regarding the plaintiffs**

19. Plaintiff Steven A. Carr is a Professor of Communication and is the Graduate Program Director in the Department of Communication at Purdue University Fort Wayne.

20. He was awarded tenure in 2000 and was awarded a full professorship in 2016.

21. Professor Carr is also the Director of the Institute for Holocaust and Genocide Studies at Purdue University Fort Wayne, the first and only academic center in Indiana devoted exclusively to the study of the Holocaust and other genocides.

22. In his role as a professor in the Communications Department, he teaches courses on media and cultural studies, and he is a film historian by training.

23. In his role as the Graduate Program Director in the Department of Communication, he advises approximately 20 graduate students in the Department, covering everything from admission to the completion of their final degree requirements.

24. In his role as director of the Institute for Holocaust and Genocide Studies, he enacts the Institute's mission, including supporting and promoting teaching and research about the Holocaust and other genocides, and promoting public engagement in global genocide prevention efforts.

25. He is currently scheduled to teach 4 courses over the 2024/2025 academic year.

26. Plaintiff David G. Schuster is an Associate Professor in the Department of History at Purdue University Fort Wayne.

27. He teaches courses in U.S. history, including the history of U.S. culture and medicine.

28. He will teach 6 courses over the 2024/2025 academic year.

29. He was awarded tenure in 2012.

30. Professor Schuster plans to pursue, and is working toward, promotion to full professorship.

31. The requirements imposed by S.E.A. 202, described above, apply to Professors Carr and Schuster, as they are "faculty members" of Purdue University as defined by the statute: they are employees of a state educational institution "whose employment duties include teaching students of the institution." Ind. Code § 39.5-1-3.

32. The statute requires Purdue's board of trustees to deny promotions to the plaintiffs if they are deemed unlikely to "foster a culture of free inquiry, free expression, and intellectual diversity within the institution." Ind. Code § 21-39.5-2-1(b)(1).

33. The statute also provides for the plaintiffs to be subject to discipline including, but not limited to, termination, demotion, and salary reduction if they are deemed, as part of a promotion or other performance review, the post-tenure review mandated by the statute, or in response to a student or employee complaint, to have failed to foster such a culture. Ind. Code § 21-39.5-2-2(a)(1).

34. Neither Professor Carr nor Professor Schuster knows what it means to "foster a culture of free inquiry, free expression, and intellectual diversity within the institution." The plaintiffs therefore cannot discern what they are required to do or refrain from doing to avoid running afoul of the statute.

35. Given the statute's uncertainty, to avoid running afoul of the statute, the plaintiffs believe they could be compelled to speak or prohibited from speaking in violation of their First Amendment rights or risk adverse employment actions, through and including termination.

36. For example, as part of his courses surveying United States history in the post-civil war period, Professor Schuster teaches about the "culture wars" surrounding the LGBTQ rights movement in the 1990s. He is aware that some academics teach about this movement as embodying the rise of a "homosexual agenda," during which, according to them, LGBTQ people were attempting to indoctrinate students and others with ideas about homosexuality. Professor Schuster does not believe that this "divergent" perspective is accurate and believes that teaching this perspective would be harmful to

[8]

his students. He thus does not believe he should be required to teach this perspective, and while he has in the past invited students to discuss this perspective during office hours, he does not devote class time to it.

37. As another example, Professor Schuster teaches about slavery and its legacy. He does not believe he should be required to teach any number of "divergent" scholarly perspectives regarding slavery, including the perspective that was once dominant in this field—with which he strongly disagrees—that slavery ultimately benefitted African-American people.

38. Professor Carr engages in teaching about the Holocaust through his work at the Institute. "Divergent" perspectives regarding the existence and scope of the Holocaust exist, ranging from denial that the Holocaust occurred to "revisionist" accounts challenging the scope and causes of that genocide. Professor Carr would not teach those "perspectives," but the language of the statute would appear to require him to do so.

39. As another example, Professor Carr recently taught a class about the eugenics movement, including legislation involving forced sterilization passed in Indiana in 1907. He does not believe that he should be required to teach, for example, the "divergent" scholarly perspective that racially based forced sterilization could ever be appropriate or even defensible.

40. Although Professors Carr and Schuster both already seek to foster a culture of free inquiry in their classrooms, this does not mean that they believe it is appropriate to

provide equal time or attention to all lines of questioning. They exercise their judgment and academic freedom to determine when further inquiry on a subject is no longer desirable or appropriate, and they have no way of knowing whether this type of in-the-moment decision-making will subject them to discipline or other employment consequences.

41. S.E.A. 202 requires the Purdue board of trustees to deny promotions to the plaintiffs if they are deemed "unlikely to expose students to scholarly works from a variety of political or ideological frameworks that may exist within and are applicable to the faculty member's academic discipline," Ind. Code § 21-39.5-2-1(b)(2), and it subjects them to discipline including termination, demotion, and salary reduction if they are deemed not to have "introduced students to scholarly works from a variety of political or ideological frameworks that may exist within the curricula" established by the board of trustees or institution's faculty, Ind. Code § 21-39.5-2-2(a)(2).

42. The plaintiffs have no idea what this means and cannot discern what they are required to do or refrain from doing to avoid running afoul of the Act.

43. Given the statute's uncertainty, to avoid running afoul of the statute, the plaintiffs believe they could be compelled to speak or prohibited from speaking in violation of their First Amendment rights or risk adverse employment actions, through and including termination. The examples cited above at 36-40 are equally illustrative as to the First Amendment consequences of this provision.

44. The speech activities of the plaintiffs are protected by the First Amendment, as they retain the academic freedom to determine the content of their instruction, free from interference by the State.

45. Given the breadth and vagueness of Indiana Code § 21-39.5-2-2(a)(1) and (a)(2), plaintiffs are subject to the serious consequences noted in the statute if they continue to teach as they have for years. This compulsion to speak, or not to speak, as directed by the statute or, alternatively, to face the penalties imposed by the statute, violates the First Amendment.

46. The speech in which the plaintiffs seek to engage is in no way antithetical to the interests of their employer.

47. The plaintiffs' desire to refrain from certain speech is in no way antithetical to the interests of their employer.

48. The interests of the plaintiffs in engaging in and refraining from protected speech greatly outweighs any countervailing interest by the State.

49. At all times defendants have acted and have failed to act under color of state law.

50. Plaintiffs are being threatened with and are being caused irreparable harm for which there is no adequate remedy at law.

**Legal claims**

51. Indiana Code §§ 21-39.5-2-1(b)(1), (2) and Indiana Code §§ 21-39.5-2-2(a)(1), (2) (eff. July 1, 2024) violate the First Amendment, to the extent that they impinge upon the

plaintiffs' academic freedom to determine the content of and deliver their instruction, free from interference by the State.

52. Indiana Code §§ 21-39.5-2-1(b)(1), (2) and Indiana Code §§ 21-39.5-2-2(a)(1), (2) (eff. July 1, 2024) violate the First Amendment and the Due Process Clause of the Fourteenth Amendment in that they are impermissibly vague.

**Request for relief**

WHEREFORE, plaintiffs request that this Court:

a. accept jurisdiction of this case and set it for hearing at the earliest opportunity;

b. declare that Indiana Code §§ 21-39.5-2-1(b)(1), (2) and Indiana Code §§ 21-39.5-2-2(a)(1), (2) are unconstitutional for the reasons noted above;

c. enter a preliminary injunction, later to be made permanent, enjoining Indiana Code §§ 21-39.5-2-1(b)(1), (2) and Indiana Code §§ 21-39.5-2-2(a)(1), (2);

d. award plaintiffs their costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988;

e. award all other proper relief.

Stevie J. Pactor
Kenneth J. Falk
Gavin M. Rose
ACLU of Indiana
1031 E. Washington St.
Indianapolis, IN 46202
317/635-4059
fax: 317/635-4105
spactor@aclu-in.org
kfalk@aclu-in.org

grose@aclu-in.org

Attorneys for Plaintiffs